613 So.2d 318 (1992)
Francis MACON
v.
HUNTSVILLE UTILITIES.
1901752.
Supreme Court of Alabama.
May 22, 1992.
As Modified on Rehearing September 11, 1992.
R. Wayne Wolfe and Scott A. Rogers of Wolfe, Jones & Boswell, Huntsville, for appellant.
Dennis Riley of Morring, Schrimsher & Riley, Huntsville, for appellee.
MADDOX, Justice.
This is a case of first impression. The question presented is whether the statutory cap of $100,000 applicable to suits against a municipality (Ala.Code 1975, § 11-93-2), applies to a suit by a municipal employee who had sued his employer on the ground that he had been wrongfully terminated because he had filed a workman's compensation claim. See, Ala.Code 1975, § 25-5-11.1, as last amended, which provides:
"No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover worker's compensation benefits under this chapter or solely because the employee has filed a written notice of violation of a safety rule pursuant to subdivision (c)(4) of section 25-5-11."
Petitioner Francis Macon had sued Huntsville Utilities on September 8, 1989, to recover workman's compensation benefits. *319 Before the case came to trial, the parties reached a settlement in the amount of $31,500. When Macon reported for work on the morning after the settlement, he was told by his supervisor to return home. That afternoon, he was informed by the personnel director that his employment had been terminated. Macon then amended his complaint against Huntsville Utilities to include a count alleging wrongful discharge and a count alleging the tort of outrage. The trial court dismissed Macon's outrage claim, and Macon thereafter amended his complaint to delete his claim for mental anguish, leaving wrongful termination as the only issue for adjudication. Macon's only claim for damages was for lost income, past and future. The jury returned a verdict for Macon in the amount of $228,658.27 plus costs.
Huntsville Utilities moved for a new trial or a judgment notwithstanding the verdict. Both were denied, but the trial judge granted Huntsville Utilities' motion to reduce the judgment pursuant to § 11-93-2, Ala.Code 1975, as last amended, and entered an order reducing Macon's judgment to $100,000. Macon asks us to reinstate the original judgment.
Section 11-93-2 reads:
"The recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for bodily injury or death for one person in any single occurrence. Recovery of damages under any judgment or judgments against a governmental entity shall be limited to $300,000.00 in the aggregate where more than two persons have claims or judgments on account of bodily injury or death arising out of any single occurrence. Recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for damage or loss of property arising out of any single occurrence. No governmental entity shall settle or compromise any claim for bodily injury, death or property damage in excess of the amounts hereinabove set forth."
(Emphasis added.)
The specific question presented, of course, is whether the legislature intended that the statutory cap should apply to damages recovered under the statute prohibiting an employer from terminating an employee solely because the employee has filed a workman's compensation claim.
In answering the question we must necessarily try to ascertain the intent of the legislature in adopting both provisions of the Code, the statutory cap and the prohibition against a wrongful termination. We believe that the statutory cap should not apply to the amount of damages recoverable in a lawsuit filed to recover damages for a wrongful termination.
What judgments against a "governmental entity" are subject to the statutory cap? Clearly, judgments that authorize "[t]he recovery of damages ... for bodily injury or death for one person in any single occurrence" are subject to the statutory cap. The judgment here is not such a judgment. Judgments that authorize the "[r]ecovery of damages ... for ... loss of property arising out of any single occurrence" are also subject to the statutory cap. Ala.Code 1975, § 11-93-2. Is this a judgment that authorizes the recovery of damages for "loss of property"?[1]
Huntsville Utilities claims that the legislature's intent in passing the statute setting a cap on damages was to limit judgments against governmental entities and that a decision in favor of the workman here would frustrate the purpose of the statute. It argues that because § 25-5-11.1 (the wrongful discharge statute) was passed after § 11-93-2 (the statutory cap *320 statute),[2] the legislature, had it intended for wrongful discharge to be excluded from the confines of § 11-93-2, would have excluded such judgments from the operation of the statutory cap statute. Huntsville Utilities quotes the following from McClain v. Birmingham Coca-Cola Bottling Co., 578 So.2d 1299, 1301 (Ala.1991), in support of its argument:
"[A] literal interpretation of a statute will not be blindly adopted when it would defeat the purpose of the statute, if any other reasonable construction can be given to the language in the dispute."
Huntsville Utilities claims that if we adopt a literal, strict interpretation of § 11-93-2 that excludes actions for wrongful discharge from its provisions we would be contravening the principle set forth in McClain and defeating the entire purpose of the statute. We think otherwise.
The State of Alabama does not preserve committee reports, or the debates that surround the adoption of legislation; so, we are unable to review the legislative history of the statute, but "[w]hen [a] statutory pronouncement is clear and not susceptible to a different interpretation, it is the paramount judicial duty of a court to abide by that clear pronouncement." Parker v. Hilliard, 567 So.2d 1343, 1346 (Ala. 1990). We apply that principle in this case.
"Property damage," as it applies to the subject statutory cap, is defined in § 11-93-1(4) as "[i]njury or destruction to tangible property caused by an occurrence." Consequently, the only question to be asked is: Was the termination of the workman here an injury to, or destruction of, tangible property? We think not. Although the right to seek lawful employment is a property right, International Union v. Russell, 264 Ala. 456, 88 So.2d 175, 183 (1956), we agree with the workman's argument that the right to seek employment is an intangible property right, rather than a tangible property right, and that the legislature did not intend that an action for wrongful discharge would be subject to the statutory cap provisions of § 11-93-2. We reach this conclusion because of the legislature's use of the words "tangible property" in the statute prescribing the damages cap.
Black's Law Dictionary (5th ed. 1983) defines "tangible" as follows:
"Having or possessing physical form. Capable of being touched and seen; perceptible to the touch; tactile; palpable; capable of being possessed or realized; readily apprehensible by the mind; real; substantial."
Webster's Ninth Collegiate Dictionary (1985) defines "tangible" as:
"1 a: capable of being perceived esp. by the sense of touch: PALPABLE b: substantially real: MATERIAL 2: capable of being precisely identified or realized by the mind 3: capable of being appraised at an actual or approximate value [assets]."
Although we have found no Alabama authority that directly addresses the issue before us, we have found a case from another jurisdiction that reaches the same conclusion we reach here. In Kwass v. Kersey, 139 W.Va. 497, 81 S.E.2d 237 (1954), the plaintiff brought suit in equity to enjoin the defendant from publishing defamatory materials about him and his practice as an attorney. In holding that the plaintiff's suit should have been brought in a court of law instead of in a court of equity, the Supreme Court of Appeals of West Virginia stated:
"The property right in the practice of a profession is ex necessitate, an intangible property connected with the personality of a practitioner of such profession."
139 W.Va. at 514, 81 S.E.2d at 246.
The court added:
"Since there is no defamation of tangible personal property alleged or shown in this record, we do not think that any question of defamation or disparagement of tangible personal property can be here considered."
*321 Id.; see also Greenberg v. De Salvo, 254 La. 1019, 229 So.2d 83, 88 (1969), quoting Kwass, 139 W.Va. at 514-15, 81 S.E.2d at 246. Abiding by the plain language used in § 11-93-1(4), this Court holds that the plaintiff's wrongful discharge does not fall within the definition of "property damage." We find it unnecessary to determine the nature of the damages recovered, because the definitions refer to the nature of the claim itself.
The definition of "property damage" in § 11-93-1(4) as "[i]njury or destruction to tangible property caused by an occurrence" can hardly be interpreted to apply to anything other than that to which it plainly refers: tangible property. Certainly, if the legislature had intended for the statute to include damage to all types of property, it would not have specified "[i]njury or destruction to tangible property." Or, had the legislature so intended, it could have stated in § 25-5-11.1 that any cause of action brought under that statute would be subject to the limiting provisions of § 11-93-2.
In Pappas v. City of Eufaula, 282 Ala. 242, 244, 210 So.2d 802, 804 (1968), this Court stated that "A statute in modification or derogation of the common law will not be presumed to alter it further than is expressly declared," and that "[a] statute which is an innovation upon the common law will not be extended further than is required by the letter of the statute."
Based on the foregoing reasons, we reverse the judgment of the trial court reducing the judgment and remand the cause to the trial court with directions to enter an appropriate judgment consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, HOUSTON, KENNEDY and INGRAM, JJ., concur.

ON APPLICATION FOR REHEARING
MADDOX, Justice.
On application for rehearing, Huntsville Utilities argues that damages for wrongful termination of employment under § 25-5-11.1, Ala.Code 1975, are compensation for damage to "tangible property" within the meaning of § 11-93-1(4), Ala.Code 1975, and, therefore, that such damages awarded against a "governmental entity," as that term is defined in § 11-93-1(1), Ala.Code 1975, are subject to the $100,000 damages cap called for in § 11-93-2, Ala.Code 1975. Huntsville Utilities agrees that "this Court was correct in first turning to both Black's and Webster's dictionaries for definitions of `tangible,'" but it contends that "[w]hile these definitions refer to various physical attributes of tangibility, they also indicate that tangible property may have some nonphysical attributes as well." (Brief in Support of Rehearing at 7.)
In support of its argument that we should find that the legislature intended for the words "tangible property" used in § 11-93-1(4) to include employment rights, Huntsville Utilities argues that "[i]t is not an absolute requirement that property have physical characteristics in order to be considered tangible property." (Brief in Support of Rehearing at 7.) Although we can agree that it is not an absolute requirement that "tangible property" have physical characteristics under every fact situation,[3] we are clear to the conclusion that the legislature did not intend that the words "tangible property" in § 11-93-1(4) be broadly interpreted, but, on the other *322 hand, intended that the words "tangible property" refer to corporeal property, that is, "that which may be felt or touched; such property as may be seen, weighed, measured, and estimated by the physical senses; that which is visible and corporeal; having substance and body as contrasted with incorporeal property rights." 73 C.J.S. Property § 15, p. 184 (1983).
Based on the foregoing, we modify the original opinion[4] and overrule the application for rehearing.
ORIGINAL OPINION MODIFIED; APPLICATION OVERRULED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS and HOUSTON, JJ., concur.
NOTES
[1] We think that the statutory cap is applicable only to the judgments mentioned in the statute, and that all judgments for the recovery of damages are not included. We note that the Legislature did use the words "damage or loss of property" in the disjunctive in § 11-93-2, but the word "damage" there seems to define whether the "property" was damaged or lost. It seems apparent that the Legislature intended the cap to apply only to tangible property that was either damaged or lost as a proximate consequence of wrongful conduct by a governmental entity, and did not intend for the cap to apply to any judgment for "damage."
[2] Sections 11-93-1 and 11-93-2, Code of Alabama 1975, were enacted in 1977. Acts of Ala. 1977, No. 673, p. 1161, §§ 1 and 2.

Section 25-5-11.1 was enacted in 1984. Acts of Ala.1984, No. 85-41, p. 44, § 11.
[3] Huntsville Utilities cites Paul v. Davis, 424 U.S. 693, 702, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976); Edwards v. Rees, 883 F.2d 882, 885 (10th Cir.1989); Geter v. Fortenberry, 849 F.2d 1550, 1556 (5th Cir.1988); Thomas v. Kippermann, 846 F.2d 1009, 1010 (5th Cir.1988); Knox v. Local 900, 361 Mich. 257, 104 N.W.2d 743 (1960); Britton v. Koep, Ms. C8-90-1169, November 27, 1990 (unpublished), 1990 WL 181221 (Minn.Ct.App.1990), reversed in part, 470 N.W.2d 518 (Minn.1991), for the proposition that employment rights are "tangible" property rights.

Five of those six cases involve the construction of 42 U.S.C. § 1983 and the intent of Congress and are of little value in trying to determine what the Alabama legislature intended when it used the words "tangible property" in § 11-93-1(4).
[4] We have eliminated the following sentence that appeared in the original opinion: "This Court has found no authority, legal or otherwise, defining the right to seek employment or to pursue a lawful occupation as a tangible property right." There are cases, of course, that do define "tangible property right" to include the right of employment, but those cases are not persuasive to us in interpreting the provisions of § 11-93-1 et seq.